## 24-12144

# United States Court of Appeals
### for the
# Eleventh Circuit

DR. LANA FOSTER,

*Plaintiff/Appellee,*

– v. –

ECHOLS COUNTY SCHOOL DISTRICT, et al.,

*Defendants,*

SHANNON KING, VINCENT HAMM, ROCKY CROSBY,
BO CORBETT, PATRICIA GRAY, et al.

*Defendants/Appellants.*

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
CASE NO: 7:23-cv-00089-WLS (Hon. W. Louis Sands)

# APPELLANTS' OPENING BRIEF

Beth Morris Ga. Bar No. 153013
Brian Stoltz Ga. Bar No. 648725
Bennett Bryan Ga. Bar No. 157099
PARKER POE ADAMS & BERNSTEIN LLP
1075 Peachtree Street, NE, Suite 1500
Atlanta, Georgia 30309
(678) 690-5718
bennettbryan@parkerpoe.com

*Attorneys for Appellants*

CP COUNSEL PRESS    (800) 4-APPEAL • (JOB 810870)

*Dr. Lana Foster v. Shannon King, et al.*, Record No. 24-12144

## <u>APPELLANTS' CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT</u>

Under Federal Appellate Rule 26.1 and Eleventh Circuit Rule 26.1, Defendants-Appellants list the trial judge(s) and all attorneys, persons, associations of persons, firms, partnerships, or corporations that have an interest in the outcome of this case or appeal, including subsidiaries, conglomerates, affiliates, and parent corporations, including any publicly held corporation that owns 10% or more of the party's stock, and other identifiable legal entities related to a party:

Bryan, Bennett: Attorney for Defendants/Appellants

Church, Mitchell: Defendant/Appellant

Corbett, Bo: Defendant/Appellant

Crosby, Rocky: Defendant/Appellant

Echols County Board of Education: Defendant

Echols County School District: Defendant

Equal Employment Opportunity Commission: Party to Settlement Agreement Giving Rise to Plaintiff/Appellee's Cause of Action

Foster, Lana: Plaintiff/Appellee

Gray, Patricia: Defendant/Appellant

Hamm, Vincent: Defendant/Appellant

King, Shannon: Defendant/Appellant

Morris, Beth: Attorney for Defendants/Appellants

*Dr. Lana Foster v. Shannon King, et al.*, Record No. 24-12144

Oinonen, Julie: Attorney for Plaintiff/Appellee

Pafford, Chad: Defendant/Appellant

Parker Poe Adams & Bernstein LLP: Law Firm for Defendants/Appellants

Stoltz, Brian: Attorney for Defendants/Appellants

Uddin, Shahnaz: Attorney for Plaintiff/Appellee

Williams & Oinonen, LLP: Law Firm for Plaintiff/Appellee

Woolf, Stephen: Attorney for Plaintiff/Appellee

No publicly traded company or corporation has an interest in the outcome of this appeal.

Respectfully submitted this 30th day of August, 2024.

## STATEMENT ON ORAL ARGUMENT

Appellants request oral argument. Because this appeal raises several novel issues in the Eleventh Circuit, oral argument will aid the decisional process. *See* Fed. R. App. P. 34(a)(2)(B)-(C).

Below, the district court denied Appellants' qualified immunity defense based on the rare "obvious clarity" method, holding that Appellants' alleged conduct obviously violated Appellee's right to make and enforce contracts under 42 U.S.C. § 1981, even though none of the Appellants are a party to any contract with Appellee. But the district court failed to consider that existing law does not clearly establish whether any individual—let alone a public official in her individual capacity—may be held personally liable under § 1981, especially where (like here) the official is not a party to any contract with the plaintiff. In light of this unsettled law, the district court's reliance on the "obvious clarity" method to deny qualified immunity is concerning.

The district court's error warrants attention for another reason: Appellee never argued a violation of her clearly established rights below. By raising the issue *sua sponte*, the district court necessarily placed the burden on Appellants to prove they did not violate clearly established law in contravention to this Court's longstanding burden-shifting framework.

i

## TABLE OF CONTENTS

APPELLANTS' CERTIFICATE OF INTERESTED PERSONS AND
CORPORATE DISCLOSURE STATEMENT ............................................ C-1 of 2

STATEMENT ON ORAL ARGUMENT ................................................... i

TABLE OF CITATIONS ......................................................... iv

STATEMENT OF JURISDICTION .................................................1

STATEMENT OF THE ISSUES .................................................2

INTRODUCTION ........................................................4

STATEMENT OF THE CASE ................................................6

    I.    STATEMENT OF FACTS. ................................................6

    II.    DISTRICT COURT PROCEEDINGS ................................9

STANDARD OF REVIEW ..............................................12

SUMMARY OF THE ARGUMENT .................................................13

ARGUMENT AND CITATION OF AUTHORITY .............................................16

THE DISTRICT COURT ERRED IN DENYING QUALIFIED IMMUNITY

    I.    APPELLANTS CARRIED THEIR INITIAL BURDEN TO SHOW THEY WERE
        ACTING WITHIN THE SCOPE OF THEIR DISCRETIONARY AUTHORITY ........17

    II.    APPELLEE FAILED TO CARRY HER BURDEN TO SHOW THAT APPELLANTS
        ARE NOT ENTITLED TO QUALIFIED IMMUNITY ...........................18

    III.    THE DISTRICT COURT ERRED IN HOLDING THAT APPELLANTS' ALLEGED
        CONDUCT VIOLATED 42 U.S.C. § 1981 AS A MATTER OF "OBVIOUS
        CLARITY" ................................................21

        a.    Existing law does not clearly establish that a public official may be held
            personally liable for violating the plaintiff's right to make and enforce
            contracts under 42 U.S.C. § 1981, especially where (like here) the
            official is not a party to any contract with the plaintiff ........................27

b.  A public official does not obviously violate a plaintiff's right to make and enforce contracts under 42 U.S.C. § 1981 where (like here) the scope of the plaintiff's contractual rights is unclear. ............................ 30

CONCLUSION ....................................................................................... 35

CERTIFICATE OF TYPE-VOLUME COMPLIANCE ......................................... 36

CERTIFICATE OF SERVICE ................................................................... 37

# TABLE OF CITATIONS

**Page(s)**

**Cases**

*A.H. Emp. Co. v. Fifth Third Bank*,
No. 11 C 4586, 2012 WL 686704 (N.D. Ill. Mar. 1, 2012)................................29

*ADTRAV Corp. v. Duluth Travel, Inc.*,
No. 2:14-CV-56-TMP, 2016 WL 4614842
(N.D. Ala. Sept. 6, 2016) .......................................................................................33

*Alcocer v. Mills*,
906 F.3d 944 (11th Cir. 2018) ....................................................................17, 20

*Anderson v. Creighton*,
483 U.S. 635 (1987)...........................................................................21, 22, 34

*Ashcroft v. al-Kidd*,
563 U.S. 731 (2011).........................................................................................21

*Auriemma v. Rice*,
910 F.2d 1449 (7th Cir. 1990) ........................................................................24

*In re Birmingham Reverse Discrimination Emp. Litig.*,
833 F.2d 1492 (11th Cir. 1987), *aff'd sub nom*...............................................32

*Bishop v. Avera*,
177 F.3d 1233 (11th Cir. 1999) ................................................................24, 25

*Blue Mint Pharmco, LLC v. Texas State Bd. of Pharmacy*,
667 F. Supp. 3d 473 (S.D. Tex. 2023)............................................................29

*Brown v. Cochran*,
171 F.3d 1329 (11th Cir. 1999) ......................................................................22

*Christmas v. Harris Cnty., Georgia*,
51 F.4th 1348 (11th Cir. 2022) .......................................................................19

*City & Cnty. of San Francisco, Calif. v. Sheehan*,
575 U.S. 600 (2015).........................................................................................16

iv

*Davis v. Scherer*,
   468 U.S. 183 (1984)....................................................................21, 26

*Davis v. Unified Sch. Dist. No. 512*,
   799 F. App'x 566 (10th Cir. 2019)....................................................24

*Dean v. Olens*,
   No. 1:18-CV-4224-TCB, 2019 WL 8017804
   (N.D. Ga. June 7, 2019)....................................................................19

*Domino's Pizza, Inc. v. McDonald*,
   546 U.S. 470 (2006)...........................................................2, 14, 28, 29

*Fils v. City of Aventura*,
   647 F.3d 1272 (11th Cir. 2011) .......................................................19

*Griffin Indus. v. Irvin*,
   496 F.3d 1189 (11th Cir. 2007) .......................................................22

*Guvenal v. 7-Eleven, Inc.*,
   No. CV 19-391, 2019 WL 6497013 (W.D. Pa. Dec. 3, 2019) ...........31

*Henderson v. McFadden*,
   112 F. 389 (5th Cir. 1901) ...............................................................34

*Holloman ex rel. Holloman v. Harland*,
   370 F.3d 1252 (11th Cir. 2004) ..................................................16, 18

*Johnson v. Halstead*,
   916 F.3d 410 (5th Cir. 2019) .........................................................2, 27

*Jones v. City of Houston*,
   756 F. App'x 341 (5th Cir. 2018)......................................................27

*Lenz v. Winburn*,
   51 F.3d 1540 (11th Cir. 1995) .......................................................3, 17

*Lopez v. Target Corp.*,
   676 F.3d 1230 (11th Cir. 2012) .......................................................31

*Martin v. Wilks*,
   490 U.S. 755 (1989)..........................................................................32

*McCarthy v. City of Cordele, Georgia,*
   ___ F.4th ___, 2024 WL 3588669 (11th Cir. 2024)............................3, 14, 29, 30

*Minnifield v. City of Birmingham Dep't of Police,*
   791 F. App'x 86 (11th Cir. 2019)....................................................24, 25

*Mullenix v. Luna,*
   577 U.S. 7 (2015)..........................................................................21

*Myrick v. Fulton Cnty., Georgia,*
   69 F.4th 1277 (11th Cir. 2023) ..................................................17, 20

*Okwan v. Emory Healthcare Inc.,*
   No. 20-11467, 2021 WL 4099236 (11th Cir. Sept. 9, 2021)..........................2, 27

*Parents Involved in Cmty. Sch. v. Seattle Sch. Dist. No. 1,*
   551 U.S. 701 (2007)......................................................................32

*Pearson v. Callahan,*
   555 U.S. 223 (2009)......................................................................16

*Perry v. VHS San Antonio Partners, L.L.C.,*
   990 F.3d 918 (5th Cir. 2021) ................................................2, 14, 28

*Powell v. Snook,*
   25 F.4th 912 (11th Cir. 2022) ........................................................17

*Reichle v. Howards,*
   566 U.S. 658 (2012).......................................................................21

*Rioux v. City of Atlanta, Ga.,*
   520 F.3d 1269 (11th Cir. 2008) ..................................................24, 25

*SawHorse, Inc. v. S. Guar. Ins. Co. of Georgia,*
   269 Ga. App. 493 (2004) ..............................................................34

*Scott v. Harris,*
   550 U.S. 372 (2007).........................................................................1

*Sheba Ethiopian Rest., Inc. v. DeKalb Cnty., Georgia,*
   No. 21-13077, 2023 WL 3750710 (11th Cir. June 1, 2023) ......22, 23, 24, 25, 27

*Students for Fair Admissions, Inc. v.*
*President & Fellows of Harvard Coll.*,
600 U.S. 181 (2023)..................................................................32

*Swint v. City of Wadley, Ala.*,
51 F.3d 988 (11th Cir. 1995) ...............................................12

*Town of Newton v. Rumery*,
480 U.S. 386 (1987)..................................................................31

*United States v. Campbell*,
26 F.4th 860 (11th Cir. 2022) .............................................19

*United States v. Lanier*,
520 U.S. 259 (1997)............................................................16, 21

*White v. Pauly*,
580 U.S. 73 (2017)....................................................................21

*Williams v. Consol. City of Jacksonville*,
341 F.3d 1261 (11th Cir. 2003) .....................................24, 25

*Wong v. United States*,
373 F.3d 952 (9th Cir. 2004) ...............................................24

*Ziglar v. Abbasi*,
582 U.S. 120 (2017)................................................21, 23, 24, 27

**Statutes**

28 U.S.C. § 1291 ..........................................................................1

28 U.S.C. § 1331 ..........................................................................1

28 U.S.C. § 1367(a) .....................................................................1

42 U.S.C. § 1981 .......................................1-3, 9-10, 13-15, 18, 21, 24, 26-30, 34-35

42 U.S.C. § 1985(3) ...................................................................23

## STATEMENT OF JURISDICTION

The district court had original jurisdiction under 28 U.S.C. § 1331 and § 1367(a) because the complaint asserts federal claims, including the 42 U.S.C. § 1981 claim that forms the subject of this appeal.

This Court has appellate jurisdiction under 28 U.S.C. § 1291 because this appeal is taken from a district court order denying qualified immunity. *Scott v. Harris*, 550 U.S. 372, 376 n.2 (2007).

Appellants timely noticed this appeal on July 2, 2024, and Appellants timely file this brief in accordance with the Clerk's docketing notice.

## **STATEMENT OF THE ISSUES**

1) Whether existing law clearly establishes that an individual may be held personally liable under 42 U.S.C. § 1981 in light of *Okwan v. Emory Healthcare Inc.,* No. 20-11467, 2021 WL 4099236 (11th Cir. Sept. 9, 2021), where the court acknowledged that the Eleventh Circuit "ha[s] never expressly addressed the question of whether an individual can be held personally liable under § 1981." *Id.* at *1, n. 1.

2) Whether existing law clearly establishes that a public official is subject to suit in her individual capacity under § 1981 in light of *Johnson v. Halstead*, 916 F.3d 410 (5th Cir. 2019), where the court noted "tension" in case law concerning "whether § 1981 claims are cognizable against government officials in their individual capacities." *Id.* at 419 n. 3.

3) Whether existing law clearly establishes a § 1981 cause of action against a public official who is not a party to any contract with the plaintiff:

   a. *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470 (2006), where the Supreme Court explained that a plaintiff must identify a contractual relationship with the defendant to state a § 1981 claim;

   b. *Perry v. VHS San Antonio Partners, L.L.C.*, 990 F.3d 918 (5th Cir. 2021), where the Fifth Circuit held that § 1981 does not create a cause of action for third-party interference with contractual rights; and

c.   *McCarthy v. City of Cordele, Georgia*, 2024 WL 3588669 (11th Cir. July 31, 2024), where this Court held that a plaintiff cannot state a § 1981 claim against a public official arising from a government board's alleged racial discrimination even if the official encouraged the board to racially discriminate.

4)   Whether, in light of these authorities, every reasonable official would have known that a public official who is not party to any contract with the plaintiff could be held personally liable for violating the plaintiff's right to make and enforce contracts under § 1981.

5)   Whether a public official obviously violates a plaintiff's rights to make and enforce contracts under § 1981 where the scope of the plaintiff's contractual rights are unclear.

6)   Whether a district court errs in denying qualified immunity where the plaintiff failed to argue a violation of her clearly established rights and longstanding circuit precedent holds that the plaintiff carries a "heavy" burden to prove a violation of clearly established rights. *Lenz v. Winburn*, 51 F.3d 1540, 1545 (11th Cir. 1995).

## INTRODUCTION

This is a qualified immunity appeal. Appellants are current and former officials of the Echols County Board of Education and Echols County School District. Appellee Lana Foster is a black woman and a former teacher with the School District.

After an acrimonious end to her teaching career, Foster filed charges with the Equal Employment Opportunity Commission alleging racial discrimination and retaliation. The Board denied the charges but entered a Settlement Agreement with Foster and the EEOC to avoid further litigation. Among other things, the Agreement required the District to develop race-conscious recruiting policies aimed at increasing the number of black teachers in Echols County. This case arises from an alleged breach of the Settlement Agreement.

Foster contends that the Board, the District, *and* the individual officials breached the Settlement Agreement by failing to immediately adopt and implement the race-based employment policies, and by failing to immediately hire any black teachers. According to Foster, the officials' conduct violated Foster's right to make and enforce contracts under 42 U.S.C. § 1981, even though none of the officials was a party to the Agreement. But Foster's claim against the officials faces an insurmountable hurdle.

Qualified immunity shields public officials from civil liability for damages

4

unless existing law provided fair warning that their alleged conduct would give rise to liability under the plaintiff's specific cause of action. Here, Appellants could not possibly have anticipated liability because the application of § 1981 to the facts of this case is anything but clear.

To begin, there is an open question in the Eleventh Circuit whether an individual may be held personally liable under § 1981. And the Fifth Circuit has questioned whether public officials are subject to suit under § 1981 in their individual capacities. Furthermore, existing law does not clearly establish that § 1981 provides a cause of action against a public official who was not a party to the contract giving rise to the plaintiff's claim for damages, while persuasive authority from the Supreme Court, the Fifth Circuit, and the Eleventh Circuit suggests the answer is no.

Even if existing law clearly established both Foster's § 1981 cause of action and the officials' potential liability, a reasonable official could conclude that Foster suffered no breach of an enforceable contractual right. The Agreement's race-based employment practices likely violate the Equal Protection Clause. And Foster's right to enforce that provision would not be obvious to any reasonable official. Assuming the Agreement's race-based employment practices are enforceable, a reasonable official could conclude that the Board (and the District) satisfied that contractual obligation.

5

In light of the open legal questions attending this case and the uncertainty of plaintiff's cause of action in this factual context, qualified immunity protects the officials from liability. Accordingly, this Court should reverse the district court's judgment.

## STATEMENT OF THE CASE

### I.   Statement of Facts.

#### a.  The Players.

Appellants are current and former officials of the Echols County Board of Education ("Board") and Echols County School District ("District"). Appellant Shannon King is the former district superintendent, Vincent Hamm is the current superintendent, Rocky Crosby is the chair of the Echols County Board of Education, Bo Corbett is the board's vice chair, and Patricia Gray, Chad Pafford, and Mitchell Church are members of the Board (together "individual officials"). [Doc. 22 ¶¶ 3-7].[1]

Although not parties to this appeal, the Board and the District are named defendants below. [*Id*. ¶ 2]. Way back in 1969, the U.S. Department of Justice filed a school desegregation action against the State of Georgia and several school districts, including Echols County. [*Id*. ¶¶ 50-51]. The District obtained unitary states from the courts in 2005. [*Id*. ¶ 52].

---

[1] The citations in this brief begin with ¶ 1 on page 4 of the complaint [Doc. 22].

Appellee Lana Foster is an African American woman and a former educator with the District. [Doc 22 ¶ 1]. Foster's career as a teacher came to an acrimonious end in 2018, when the District terminated her employment for ethics violations. [*Id*. ¶ 99]. She filed charges against the District with the Equal Employment Opportunity Commission ("EEOC") arising from her termination, alleging racial discrimination and retaliation. [*Id*. ¶ 103].[2]

b. *The Settlement Agreement.*

Foster entered into a Settlement Agreement with the Board and the EEOC arising from her discrimination and retaliation charges. In Section II of the Agreement, titled "Charging Party's Relief," the Board agreed to pay damages, refrain from retaliating against Foster in future employment matters, and take certain actions concerning the contents of her personnel file. [Doc 22-1 at 2-3]. In Section III, titled "Recruitment and Hiring," the Board agreed to develop and implement a hiring and recruitment plan to increase the number of black applicants, "effective immediately." [*Id*. at 3-4]. According to Foster, the purpose of this provision was "to bring back Black educators" to Echols County. [Doc. 22 ¶ 159]. Importantly, the Board denied any wrong doing in connection with the Settlement Agreement. [Doc. 22-1 at 5].

---

[2] This was not the first time Foster charged the District with racial discrimination and retaliation. She lodged similar complaints in 2009, which also resulted in a settlement agreement. [Doc. 22 ¶ 5].

In exchange for the terms above, Foster agreed to release all existing claims against the Board, the District, and its officials, and agreed never to seek employment with the District again. [Doc. 27-2 at 2].

### c.  The (Alleged) Breach.

Foster alleges that all defendants breached Section III by failing to develop and implement a plan for increasing the number of black educators. [Doc. 22 ¶¶ 141, 168-170].[3] As proof of this breach, Foster alleges that the District has not hired any black teachers. [*Id*. ¶¶ 106-112]. According to Foster, the "failure to hire any black person in any capacity is the natural and expected consequence of the Defendants' failure to fulfill its obligations" under the Agreement. [*Id*. ¶ 182]. In the alternative, she alleges the individual officials breached Section III by failing to *immediately* develop a hiring and recruitment plan for increasing Black educators. [*Id.*]. Foster pleads in the alternative because she ultimately concedes that the District did, in fact, develop the hiring and recruitment plan to increase minority candidates in January 2022—14 months after the effective date of the Settlement Agreement. [*Id*. ¶¶ 168-170]; [Doc. 27-3 at 3]. According to Foster, waiting 14 months to perform those duties was untimely and therefore amounts to a breach. [Doc. 22 ¶¶ 168-170].

---

[3] Foster also asserts a breach of Section II of the Agreement, but the District Court dismissed Foster's claims arising from Section II. So this brief focuses on Foster's allegations concerning Section III.

## II.    District Court Proceedings.

Foster filed her first amended complaint during the 2023 holiday season. [Doc. 22]. The complaint named the District, the Board, and the officials in their individual capacities. [*Id*. ¶¶ 2-7]. It included six "counts." In Count I, Foster alleged that all defendants violated her right to make and enforce contracts under 42 U.S.C. § 1981 based on race by breaching the Settlement Agreement. [*Id*. ¶ 13]. In Counts II - V, Foster alleged breach of contract claims under Title VII and Georgia law. [*Id*. ¶¶ 122-128]. And in Count VI, Foster alleged that all defendants retaliated against Foster by breaching the Settlement Agreement in violation of § 1981. [*Id*. ¶ 194].

The defendants moved to dismiss the complaint for failure to state a claim. [Doc. 27]. Among other things, the motion argued that Foster failed to plausibly allege any breach of her rights under Section II, that Foster lacked any enforceable rights under Section III, [Doc. 27-1 at 9], and that no breach of Section III occurred because Foster conceded that the District adopted a hiring and recruitment plan in January 2022. [*Id*. at 18]. The individuals further moved to dismiss Foster's § 1981 claims based on qualified immunity, arguing that Foster failed to carry her burden to plausibly allege a violation of her clearly established rights under § 1981. [*Id*. at 24-27]. They also pointed out that Foster's complaint did not make specific

allegations about each official's alleged conduct, but rather grouped all defendants together. [*Id*. at 23].

In response, Foster contested the individual officials' entitlement to qualified immunity on grounds that their alleged conduct did not arise from their discretionary duties. [Doc. 31 at 20]. According to Foster, the individual officials' duties under the Settlement Agreement were ministerial, not discretionary, so qualified immunity offered them no protection. [*Id*.]. She also argued that the officials' alleged conduct violated her "clearly established … right to be free from retaliation after complaining of race discrimination" because "no reasonable public official would think that it is permissible to retaliate against an individual for complaining about race discrimination." [*Id*. at 22]. Importantly, Foster did *not* argue that the individual officials' alleged discrimination violated her clearly established rights to be free from racial discrimination in the making and enforcing of contracts under § 1981.

The district court partially granted and partially denied the motion to dismiss. [Doc. 36]. First, the district court granted the motion as to Foster's claims under Georgia law. [*Id*. at 7]. It also dismissed Foster's § 1981 retaliation claim and her breach of contract claim arising from the anti-retaliation provision of Section II of the Settlement Agreement because her allegations of retaliation were merely "continuations of the complaint which formed the basis of her 2018 EEOC

Complaint." [Doc. 36 at 17 & 25] (dismissing Foster's contract claims "to the extent [she] relies on a breach of Section II of the Settlement Agreement"). Finally, the district court dismissed Foster's contract claims against the officials because "they were not parties to the Settlement Agreement, [so] they cannot be liable for breaching it." [*Id*. at 19].

The district court denied the motion to dismiss as to Foster's breach of contract claims arising from Section III of the Settlement Agreement. [*Id*. at 9]. Acknowledging that the District developed the required hiring and recruitment plan in January 2022, the district court held that "a 14-month delay to comply with Section III, if proved, could be a breach of the Settlement Agreement, because that timeframe could be found to exceed any reasonable construction of the word 'immediately.'" [*Id*.]. Based on this alleged breach, the district court also held that Foster plausibly alleged a violation of her right to make and enforce contracts under § 1981. [*Id*. at 25-26].

The district court also denied qualified immunity. Although the district court acknowledged that the officials' alleged conduct arose from their discretionary functions, [Doc. 36 at 20-21], it rejected the proposition that a plaintiff "must allege specific facts, by specific Defendants" to defeat qualified immunity. [*Id*. at 18]. Instead, the district court held that Foster's generalized allegations against "all Defendants" were good enough. [*Id*.]. And despite recognizing that Foster failed to

11

argue a violation of clearly established rights, the district court reached the issue anyway. [Doc. 36 at 22] ("Plaintiffs [sic] neglect to explain whether the Individual Defendants' alleged intentional discrimination violated a clearly established right. In any case, the Court finds that Defendants, as alleged, violated a clearly established right."). Relying on the narrow "obvious clarity" exception to qualified immunity, the Court found that the individual officials violated Foster's clearly established rights based on "the statutory text and general principles" without the benefit of materially similar case law. [*Id*. at 23 n. 15]. According to the district court, "It is thus obvious from the statutory text that an official who intentionally breached a contract because of the contracting party's race violates § 1981." [*Id*. at 23].

The individual officials timely appealed. [Doc. 40]. All defendants moved to stay proceedings in the district court pending resolution of the appeal. [Doc. 43]. However, because the district court did not rule on the motion before their answer was due, the defendants filed their answer and defenses out of an abundance of caution. [Doc. 44]. As of the filing of this brief, the district court has yet to rule on the motion to stay.

## STANDARD OF REVIEW

This Court reviews *de novo* a district court's denial of qualified immunity. *Swint v. City of Wadley, Ala*., 51 F.3d 988, 994 (11th Cir. 1995).

## SUMMARY OF THE ARGUMENT

Qualified immunity shields public officials from civil liability for damages unless their conduct violated the plaintiff's clearly established rights. The purpose of qualified immunity doctrine is to allow public officials to anticipate when their conduct might give rise to liability. To defeat qualified immunity, the plaintiff must establish that the defendant violated her federal rights, and that her rights were clearly established at the time. This ordinarily requires the plaintiff to identify case law from the Supreme Court or the Eleventh Circuit holding the defendant's specific conduct to be unlawful. In a rare case, the plaintiff may convince the court that the unlawfulness of the defendant's conduct is so obvious that controlling case law is unnecessary.

Here, Foster alleges that the individual officials violated her right to make and enforce contracts under 42 U.S.C. § 1981 by breaching Section III of the Settlement Agreement, which required the Board to adopt race-based employment practices. But Foster has not shown the individual officials violated her rights under § 1981, let alone her clearly established rights. In fact, she forfeited any argument that the officials' conduct violated her clearly established rights by failing to raise it below.

Despite acknowledging that Foster failed to argue a violation of her clearly established rights, the district court reached the issue anyway. It *sua sponte*

concocted arguments on Foster's behalf and denied qualified immunity. According to the district court, this is one of those rare cases where the individual officials' alleged conduct so obviously violated § 1981 that materially similar case law was unnecessary. Not so.

Under existing law, the officials could not have anticipated that their alleged conduct would give rise to § 1981 liability. Whether an individual may be held personally liable under § 1981 remains an open question in the Eleventh Circuit. And the Fifth Circuit has questioned whether public officials are subject to suit in their individual capacities under § 1981 at all. Even if existing law *did* clearly subject public officials to suit or liability under § 1981, the statute's application to the facts of this case is unclear because none of the officials is a party to the Settlement Agreement. In *Domino's Pizza, Inc. v. McDonald*, the Supreme Court explained that a plaintiff must identify a contractual relationship *with the defendant* to state a § 1981 claim. And in *Perry v. VHS*, the Fifth Circuit interpreted *McDonald* to foreclose § 1981 claims against a defendant who is not party to the contract giving rise to the plaintiff's cause of action. Along similar lines, this Court's opinion in *McCarthy v. City of Cordele* holds that a plaintiff cannot state a § 1981 claim against an individual official for a government board's alleged discrimination, even if the official is the chairman of the board and encouraged the board to discriminate based on race.

Qualified immunity applies for yet another reason. Foster bases her § 1981 claim on an alleged breach of Section III of the Settlement Agreement, which required the District to adopt race-conscious employment practices for future applicants, "effective immediately." But Foster agreed to never seek future employment with the District again, so a reasonable official conclude that Foster lacked any rights under Section III in the first instance. A reasonable official could also conclude that Section III's requirement that the District adopt race-based employment practices violates the Equal Protection Clause and is therefore unenforceable as against public policy. Finally, a reasonable official could conclude that the District's performance of the duties required by Section III (albeit 14 months after the Agreement's effective date) did not violate Foster's rights under § 1981.

In sum, § 1981's application to this case is unclear because existing law does not clearly establish that the individual officials would be subject to suit or liability under § 1981 in any case, let alone under the facts alleged. In light of these open questions, the individual officials could not have anticipated that their alleged conduct would give rise to § 1981 liability. Accordingly, the district court erred by denying qualified immunity.

This Court should reverse that judgment.

15

## ARGUMENT AND CITATION OF AUTHORITY

## THE DISTRICT COURT ERRED IN DENYING QUALIFIED IMMUNITY

"The doctrine of qualified immunity protects government officials from liability for damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (cleaned up). Qualified immunity balances "the need to hold public officials accountable" with "the need to shield officials from harassment, distraction, and liability" when carrying out their official duties. *Id*. The "clearly established rights" requirement serves that interest by "ensur[ing] that defendants reasonably can anticipate when their conduct may give rise to liability." *United States v. Lanier*, 520 U.S. 259, 270 (1997). Because of qualified immunity doctrine's importance to "society as a whole," the Supreme Court "often corrects lower courts when they wrongly subject individual officers to liability." *City & Cnty. of San Francisco, Calif. v. Sheehan*, 575 U.S. 600, 611 n. 3 (2015) (collecting cases).

The Eleventh Circuit employs a burden-shifting regime to resolve qualified immunity defenses. *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1264 (11th Cir. 2004). First, the defendant must show that his alleged misconduct fell within the scope of his discretionary authority. *Id*. Then, the burden shifts to the plaintiff to show that the defendant violated the plaintiff's rights, and that those

16

rights were clearly established at the time. *Powell v. Snook*, 25 F.4th 912, 920 (11th Cir. 2022). Courts may address the two prongs in any order. *Id.*

To show a violation of clearly established law, a plaintiff must ordinarily identify materially similar case law from the Supreme Court or the Eleventh Circuit holding the defendant's specific conduct to be unlawful. *Id.* In the rare "obvious clarity" case, a plaintiff may convince the court that the statutory text or a broad principle in case law clearly established the unlawfulness of the defendant's conduct without factually similar case law. *Id.* at 921. The "obvious clarity" method, however, "is a narrow exception" to qualified immunity. *Id.* "If case law, in factual terms, has not staked out a bright line, qualified immunity almost always protects the defendant." *Id.* (citation omitted). Finally, a plaintiff must show that *each* defendant's alleged conduct violated clearly established law. *Alcocer v. Mills*, 906 F.3d 944, 951 (11th Cir. 2018). General allegations against "defendants" as a group are insufficient. *Myrick v. Fulton Cnty., Georgia*, 69 F.4th 1277, 1301 (11th Cir. 2023).

## I. APPELLANTS CARRIED THEIR BURDEN TO SHOW THEY WERE ACTING WITHIN THEIR DISCRETIONARY AUTHORITY.

"A government official acts within her discretionary authority if the actions were (1) undertaken pursuant to the performance of her duties and (2) within the scope of her authority." *Lenz v. Winburn*, 51 F.3d 1540, 1545 (11th Cir. 1995). The alleged lawfulness of the official's misconduct is irrelevant to the discretionary

function analysis. *See Holloman*, 370 F.3d at 1266 ("the defendant must have been performing a function that, but for the alleged constitutional infirmity, would have fallen with his legitimate job description"). Below, the district court correctly held that the individual officials carried their burden. *See* [Doc. 36 at 20] ("Defendants were performing a legitimate job-related function, with respect to their alleged § 1981 violations."). And the individual officials do not challenge that conclusion. So the burden shifts to Foster show that the officials are not entitled to qualified immunity.

## II. APPELLEE FAILED TO CARRY HER BURDEN TO SHOW THAT APPELLANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY.

Foster has not plausibly alleged a violation of her rights under § 1981, let a violation of her clearly established rights. She did not identify materially similar case law from the U.S. Supreme Court or the Eleventh Circuit clearly establishing the unlawfulness of the individual officials' alleged conduct. Nor did she argue that a broader principle from case law or the statutory text itself rendered their conduct unlawful as a matter of obvious clarity. In fact, Foster *never* argued that the individual officials' alleged discrimination violated a clearly established right. *See* [Doc. 36 at 22] ("Plaintiffs [sic] neglect to explain whether the Individual Defendants' alleged intentional discrimination violated a clearly established right.").

By failing to argue a violation of clearly established rights, Foster forfeited the argument, which is "reason enough" to grant qualified immunity. *See Christmas v. Harris Cnty., Georgia*, 51 F.4th 1348, 1354 & n. 4 (11th Cir. 2022) ("Christmas somehow never argues that Sheriff Jolley violated any law that was clearly established. She's thus forfeited any such argument—which is reason enough to [reverse] the district court's qualified-immunity finding."). Despite acknowledging Foster's failure to argue a violation of clearly established rights, the district court reached the issue anyway. *See* [Doc. 36 at 22] ("In any case, the Court finds that Defendants, as alleged, violated a clearly established right."). It shouldn't have.

"To prevail on a particular theory of liability, a party must present that argument to the district court." *Fils v. City of Aventura*, 647 F.3d 1272, 1284 (11th Cir. 2011). "Our adversarial system requires it; district courts cannot concoct or resurrect arguments neither made nor advanced by the parties." *Id*. Considering arguments a party never made renders that party's qualified immunity burden "illusory," *Dean v. Olens*, No. 1:18-CV-4224-TCB, 2019 WL 8017804, at *3 (N.D. Ga. June 7, 2019), and effectively shifts the burden to the other side. Before considering forfeited arguments, the court must identify an "extraordinary circumstance" justifying the court's *sua sponte* intervention. *United States v. Campbell*, 26 F.4th 860, 877 (11th Cir. 2022) ("[W]e must now determine whether

this case presents an extraordinary circumstance such that we should exercise our discretion to excuse the Government's forfeiture…").

The district court's order violates these basic tenets of adversarial justice. By denying qualified immunity based on arguments Foster never made, the district court rendered her "heavy" burden to be illusory. It necessarily placed the burden on the individual officials to prove they did not violate Foster's clearly established rights, and denied the officials an opportunity to rebut the district court's *sua sponte* arguments. Even worse, the district court skated past Foster's forfeiture without identifying any reason—let alone an "extraordinary circumstance"—that would justify judicial intervention.

The district court also improperly relieved Foster of her duty to allege facts showing that each defendant violated clearly established law. [Doc. 36 at 18] (holding that Foster was not required to "allege specific acts by specific defendants"). Rather than parsing the record to determine whether each officials' alleged conduct violated § 1981, the district court's qualified immunity analysis grouped all defendants together, which *Alcocer* prohibits. [*Id*. at 22-23]. *See also Myrick*, 69 F.4th at 1301 ("We may not examine the actions of a group of defendants collectively").

These errors provide one reason to reverse the district court. The errors discussed below provide several more.

### III.    THE DISTRICT COURT ERRED IN HOLDING THAT APPELLANTS' ALLEGED CONDUCT VIOLATED 42 U.S.C. § 1981 AS A MATTER OF "OBVIOUS CLARITY."

The purpose of qualified immunity's "clearly established rights" prong is "to ensure that defendants reasonably can anticipate when their conduct may give rise to liability." *United States v. Lanier*, 520 U.S. 259, 270 (1997). For a right to be clearly established, "the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). In other words, "existing precedent must have placed the statutory or constitutional question beyond debate." *Reichle v. Howards*, 566 U.S. 658, 664 (2012). When the law governing the alleged statutory violation is *not* clearly established—*i.e.*, when the court faces "open legal questions," *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011), or "when the courts are divided on an issue so central to the cause of action," *Ziglar v. Abbasi*, 582 U.S. 120, 154 (2017)—a reasonable official "lacks the notice required before imposing liability." *Id*.

The Supreme Court has "repeatedly" instructed lower courts "not to define clearly established law at a high level of generality." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015). Instead, courts must "particularize" clearly established law "to the facts of the case," *White v. Pauly*, 580 U.S. 73, 79 (2017), and to the statutory right giving rise to the plaintiff's specific cause of action. *See Davis v. Scherer*, 468 U.S.

183, 194 n.12 (1984) ("[O]fficials sued for violations of rights conferred by a statute or regulation, like officials sued for violation of constitutional rights, do not forfeit their immunity by violating some other statute or regulation."). *See also Sheba Ethiopian Rest., Inc. v. DeKalb Cnty., Georgia*, No. 21-13077, 2023 WL 3750710 at *5 (11th Cir. June 1, 2023) ("where a plaintiff claims that an official violated a statute, our inquiry must be statute-specific"). Otherwise, "plaintiffs would be able to convert the rule of qualified immunity into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights." *Anderson*, 483 U.S. at 639.

These settled principles apply to racial discrimination cases like this one. This Court has long recognized that "the general proposition that it is illegal to discriminate against a person on the basis of race" is too broad to clearly establish law for qualified immunity purposes. *Brown v. Cochran*, 171 F.3d 1329, 1333 (11th Cir. 1999). *See also Griffin Indus. v. Irvin*, 496 F.3d 1189, 1209 (11th Cir. 2007) ("[T]he Fourteenth Amendment's broad command that no state shall 'deny to any person within its jurisdiction the equal protection of the laws' may, as it does here, simply operate at too high a level of generality."). Whether the defendant violated clearly established antidiscrimination law depends on the facts of the case, *Brown*, 171 F.3d at 1333, and the statutory right giving rise to the

cause of action. *See Sheba*, 2023 WL 3750710 at *5 ("where a plaintiff claims that an official violated a statute, our inquiry must be statute-specific").

The Supreme Court's opinion in *Ziglar v. Abbasi* illustrates how qualified immunity principles apply to statutory racial discrimination claims. In *Ziglar*, the plaintiffs were a group of detainees alleging that several Department of Justice officials conspired to hold the plaintiffs in harsh conditions of confinement based on race in violation of 42 U.S.C. § 1985(3). 582 U.S. at 152. The court assumed that the officials discriminated based on race and asked whether, under existing law, those officials could have anticipated "potential liability for this statutory offense." *Id*. Based on then-existing law, the court answered "no." That's because before *Ziglar*, the Supreme Court had never addressed whether § 1985(3) creates a cause of action for conspiracies between officials of the same governmental agency, and the federal courts of appeals were divided on the issue. *Id*. at 153. Since existing law did not clearly establish that the officials could be "the subject of a private cause of action for damages under § 1985(3)," qualified immunity applied. *Id*. at 154-155.

In *Sheba v. DeKalb*, this Court applied those principles to a discrimination claim under § 1981. In *Sheba*, the plaintiff was a corporation that alleged county officials interfered with the corporation's right to make and enforce contracts based on race. 2023 WL 3750710 at *1. The officials claimed qualified immunity. But

the district court denied qualified immunity based on the broad proposition that "it is clearly established that Section 1981 prohibits racial discrimination." *Id*. at *7. This Court reversed, holding that the district court's formulation of law was too general because it failed to account for the fact that the plaintiff was a corporation. *Id*. And because "there was no clearly established law in our circuit determining that officials are liable under section 1981 for discriminating against a corporation," qualified immunity applied. *Id*. at *9.[4]

---

[4] *Sheba* is only the most recent example. The Eleventh Circuit routinely grants qualified immunity in cases alleging racial discrimination where the law governing the plaintiff's specific cause of action was not clearly established. *See Minnifield v. City of Birmingham Dep't of Police*, 791 F. App'x 86, 92 (11th Cir. 2019) (granting qualified immunity because existing law did not clearly establish that refusing to recommend employee for job transfer based on race was unlawful); *Rioux v. City of Atlanta, Ga.*, 520 F.3d 1269, 1283 (11th Cir. 2008) (granting qualified immunity because existing law did not clearly establish that discriminating against employee based on race was unlawful if the defendant had mixed motives); *Williams v. Consol. City of Jacksonville*, 341 F.3d 1261, 1272 (11th Cir. 2003) (granting qualified immunity because existing law did not clearly establish that refusing to create new positions based on applicant's race was unlawful); *Bishop v. Avera*, 177 F.3d 1233, 1236 (11th Cir. 1999) (granting qualified immunity in § 1981 discrimination case because existing law did not clearly establish that 'at will' employees had contractual relationship with employer). *See also Davis v. Unified Sch. Dist. No. 512*, 799 F. App'x 566, 569 (10th Cir. 2019) (granting qualified immunity because existing law did not clearly establish that reassigning teacher based on race constitutes an adverse employment action); *Wong v. United States*, 373 F.3d 952, 976 (9th Cir. 2004) (granting qualified immunity because existing law did not clearly establish that discriminating against non-admitted aliens based on race was unlawful); *Auriemma v. Rice*, 910 F.2d 1449, 1458 (7th Cir. 1990) (granting qualified immunity because existing law did not clearly establish that discriminating against white people was unlawful).

Under *Ziglar* and *Sheba*, allegations of racial discrimination are insufficient to defeat qualified immunity if existing law did not clearly establish the defendant's potential liability for the statutory cause of action alleged. *Id.*

The district court's judgment violated these settled principles. Ignoring the Supreme Court's oft-repeated admonition, the district framed clearly established law at a too-high level of generality, broadly observing that "it is well established in the Eleventh Circuit that race-based discrimination in employment is prohibited by § 1981." [Doc. 36 at 23]. According to the district court, "it would be clear to every reasonable government official that to violate an EEOC Settlement Agreement on the basis of a former-employee's race would violate federal law." [*Id.*]. Not so.

This Court has long held that defining clearly established law as "the right to be free from racial discrimination… in employment" is too general for qualified immunity purposes. *See Minnifield*, 791 F. App'x at 92 ("The district court assumed that Officer Minnifield asserted the right to be free from racial discrimination and retaliation in the workplace. However, this formulation was too broad."). This case presents a textbook example of why the rule exists. It's not *at all* obvious that breaching a contract with a party who is *not* an employee amounts to "employment discrimination," especially where the contract expressly prohibits that party from future employment. *See Minnifield*, *Rioux, Williams, Bishop,*

25

*Davis*, *supra* fn. 4 (granting qualified immunity because existing law did not clearly establish that the defendant's specific conduct amounted to unlawful employment discrimination).

The district court's other formulation of law fares no better. According to the district court, "[i]t is thus obvious from the statutory text than an official who intentionally breached a contract because of a contracting party's race would violate § 1981." [Doc. 36 at 22]. This formulation of law fails to account for the fact that none of the officials was a party to the Settlement Agreement, and therefore none of them could possibly have breached the contract giving rise to Foster's claim. The district court's failure to consider this fact in its qualified immunity analysis is puzzling because the district court dismissed Foster's breach of contract claim against the individuals for that very reason. *See* [Doc. 36 at 19] ("Defendants move to dismiss the Breach of Contract and Breach of the Implied Covenant claims against the Individual Defendants, contending that because they were not parties to the Settlement Agreement, they cannot be liable for breaching it… The Court agrees.").

Had the district court particularized existing law to the facts of the case, as the Supreme Court requires, the unsettled nature of Foster's § 1981 claim and the uncertainty of the individual officials' potential liability would have become obvious.

### a. Existing law does not clearly establish that a public official may be held personally liable for violating the plaintiff's right to make and enforce contracts under 42 U.S.C. § 1981, especially where the official is not a party to any contract with the plaintiff.

Existing law does not clearly establish that individual defendants may be held personally liable under § 1981. In *Okwan v. Emory Healthcare Inc.,* No. 20-11467, 2021 WL 4099236 (11th Cir. Sept. 9, 2021), the court acknowledged that the Eleventh Circuit "ha[s] never expressly addressed the question of whether an individual can be held personally liable under § 1981." *Id.* at *1, n. 1. Existing law does clearly establish that public officials are subject to suit under § 1981 in their individual capacities, either. In *Johnson v. Halstead*, 916 F.3d 410 (5th Cir. 2019), the Fifth Circuit recognized longstanding "tension" in case law concerning "whether § 1981 claims are cognizable against government officials in their individual capacities." *Id.* at 419, n. 3 (collecting cases). "When the courts are divided on an issue so central to the cause of action alleged"—including whether any individual (let alone a public official) is subject to suit under the cause of action alleged—"a reasonable official lacks the notice required before imposing liability." *Ziglar*. So qualified immunity applies. *See Ziglar*, *Sheba* (holding that qualified immunity applies when defendant's potential liability was not clearly established). *See also Jones v. City of Houston*, 756 F. App'x 341, 347 n. 6 (5th Cir. 2018) (granting qualified immunity because it's not clearly established that § 1981 claims against public officials in their individual capacities are cognizable).

27

§ 1981's application to the facts of this case is unclear for another reason: none of the individual officials are a party to the Settlement Agreement. And existing law suggests that § 1981 does not cover claims alleging third-party interference with contract.

The Supreme Court's opinion in *Domino's Pizza, Inc. v. McDonald* is our starting point. In *McDonald*, the sole shareholder of a corporation alleged that the defendant violated his right to make and enforce contracts under § 1981. 546 U.S. at 473. But the shareholder was not a party to the any contract with the defendant; only the corporation was. *Id*. So the issue facing the court was "whether a plaintiff who lacks any rights under an existing contractual relationship *with the defendant*… may bring suit under … § 1981." *Id*. at 472 (emphasis added). Applying settled contract principles, the Court answered "no" and dismissed the claim. *Id*. at 478-479.

Some courts interpret *McDonald* to foreclose third-party interference claims under § 1981. *See Perry v. VHS San Antonio Partners, L.L.C.*, 990 F.3d 918 (5th Cir. 2021). In *Perry*, the plaintiff filed a § 1981 claim against a defendant with whom the plaintiff had no contractual relationship. According to the plaintiff, the defendant violated her right to make and enforce contracts under § 1981 by interfering with the plaintiff's contract with another party. The Fifth Circuit

dismissed the claim under *McDonald*, holding that § 1981 does not authorize third-party interference claims. *Id*. at 924.

Under *McDonald*, "contractual privity is the *sine qua non* of a § 1981 claim." *A.H. Emp. Co. v. Fifth Third Bank*, No. 11 C 4586, 2012 WL 686704, at *5 (N.D. Ill. Mar. 1, 2012). Put another way, to state a claim under § 1981, "the contract at issue must be between the plaintiff and the defendant." *Blue Mint Pharmco, LLC v. Texas State Bd. of Pharmacy*, 667 F. Supp. 3d 473, 494 (S.D. Tex. 2023).

*Blue Mint* sends the bolt home. In *Blue Mint*, the plaintiff filed a § 1981 action against a state board and its members in their individual capacities. *Id*. at 480. But the plaintiff failed to identify "a contract with any of the individual Board members." *Id*. at 494. The court granted qualified immunity for that reason. *Id*. Same too here. Because Foster has failed to identify any contractual relationship with the individual school officials to support her § 1981 claim, they are entitled to qualified immunity.

The Eleventh Circuit's recent opinion in *McCarthy v. City of Cordele, Georgia*, ___ F.4th ___, 2024 WL 3588669 (11th Cir. 2024), supports this conclusion. In *McCarthy*, a city commission voted to terminate the plaintiff's employment contract. *Id*. at *1. The plaintiff filed a § 1981 claim against the city, alleging the commission terminated his contract based on race. *Id*. The plaintiff

29

also sued the chairman individually, alleging that he actively encouraged the other commissioners to terminate the plaintiff's contract based on race. *Id*. This Court dismissed the claim against the chairman because the only the commission, and not the chairman, could terminate the plaintiff's contract. *Id*. at *4. So the chairman could not be held liable for the commission's alleged discrimination. *Id*. Under *McCarthy*, public officials cannot be held individually liable under § 1981 for a government board's racially-motivated breach of an employment contract. Likewise, the individual officials cannot be held liable for the Board (or District's) alleged breach of the Settlement Agreement.

In sum, Foster lacks a § 1981 cause of action against the individual officials, let alone a clearly established one. And, in any event, a reasonable official in Appellants' positions would not have known that their alleged conduct violated Foster's rights under § 1981.

### b.    A public official does not obviously violate a plaintiff's right to make and enforce contracts under 42 U.S.C. § 1981 where (like here) the scope of the plaintiff's contractual rights is unclear.

The district court held that the individual officials obviously violated Foster's right to make and enforce contracts under 42 U.S.C. § 1981 by breaching Section III of the Settlement Agreement. Not so. For three reasons, the scope of Foster's contractual rights under Section III is unclear. So it's not obvious that Foster suffered a violation of her right to make and enforce contracts.

*First*, it's not obvious that Section III of the Settlement Agreement was intended to benefit Foster. After all, Foster's rights are found in Section II, titled "Charging Party's Relief." In contrast, Section III benefits future applicants. Because Foster's rights are expressly set forth in Section II, and because Foster expressly agreed not to seek future employment with the District, [Doc. 27-2 at 1], a reasonable official could conclude that Section III was not intended to benefit her. Under this reasonable interpretation of the contract, a breach of Section III would not result "the *loss* of an actual contract interest" owed to Foster. *See Lopez v. Target Corp.*, 676 F.3d 1230, 1234 (11th Cir. 2012) (emphasis in original).[5] So it's not obvious that breaching Section III would violate Foster's right to make and enforce contracts under § 1981.

*Second*, it's not obvious that Section III creates any enforceable rights in the first instance. A contract that violates public policy is unenforceable. *See Town of Newton v. Rumery*, 480 U.S. 386, 392 (1987) ("a promise is unenforceable if the interest in its enforcement is outweighed in the circumstances by a public policy harmed by enforcement of the agreement"). The public policy of the Equal Protection Clause is "doing away with all government imposed discrimination

---

[5] That Foster is a party to the Settlement Agreement does not mean that every provision in the contract is intended for her benefit. *See Guvenal v. 7-Eleven, Inc.*, No. CV 19-391, 2019 WL 6497013, at *5 (W.D. Pa. Dec. 3, 2019) ("[T]he Complaint fails to state a claim on behalf of Guvenal as opposed to Guvenal, Inc. While he is a party to the Settlement Agreement, the obligations that are alleged to be in dispute are duties owed to the corporation, not to Mr. Guvenal[.]").

based on race." *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181, 206 (2023). Because Section III requires the District to adopt race-conscious employment practices,[6] it must survive strict scrutiny. *See In re Birmingham Reverse Discrimination Emp. Litig.*, 833 F.2d 1492, 1501 (11th Cir. 1987), *aff'd sub nom. Martin v. Wilks*, 490 U.S. 755 (1989) ("We perceive no reason for treating a consent decree entered pursuant to a voluntary settlement differently from a voluntary affirmative action plan."). A race-based classification will survive strict scrutiny only when the government's purpose is "remediating specific, identified instances of past discrimination that violated the Constitution." *Id.* at 207. *See also Parents Involved in Cmty. Sch. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 720 (2007).

Nothing in the complaint suggests that the Board's purpose in entering the Settlement Agreement was to remedy specific instances of past discrimination. In fact, the Settlement Agreement expressly denies it. [Doc. 22-1] ("this is not an admission of guilt or wrong doing"). And the fact that the District was subject to a consent order decades ago makes no difference because it reached unitary status in 2005. *See Parents Involved*, 551 U.S. at 721 ("Once Jefferson County achieved unitary status, it had remedied the constitutional wrong that allowed race-based

---

[6] Foster cites the District's failure to hire any black educators—i.e., its failure to make race-based employment decisions—as proof of the alleged breach of Section III, which reinforces the conclusion that Section III requires the District to make race-based employment decisions.

assignments. Any continued use of race must be justified on some other basis."). Without a constitutionally sound reason for adopting race-based employment practices, a reasonable official could conclude that Section III was unenforceable as against public policy. If follows that a breach of an unenforceable contractual provision does not obviously violate anyone's right to make and enforce contracts under § 1981.

*Third*, it's not obvious that the District (or the Board) breached Section III in the first instance. Section III provides that "[e]ffective immediately," the District will develop and implement a race-conscious recruitment policy. [Doc. 22-1 at 3]. The district court held that "effectively immediately" meant that the Board had a duty to implement the race-conscious employment practices immediately, and that taking 14 months to adopt the plan was not "immediate." [Doc. 36 at 9]. But the phrase "effectively immediately" generally refers to the time in which a contract becomes enforceable. *ADTRAV Corp. v. Duluth Travel, Inc.*, No. 2:14-CV-56-TMP, 2016 WL 4614842, at *19 (N.D. Ala. Sept. 6, 2016). To create a specific time frame for the performance of any particular duty, contracting parties ordinarily use specific language. Indeed, the parties here knew how to create a specific deadline because the Settlement Agreement creates specific deadlines for other contractual obligations. [Doc. 22-1 at 3] (providing that training must occur within one year). So a reasonable official could conclude that the phrase "effective

33

immediately" created a duty to immediately *begin* working on those race-based employment practices, not to immediately *complete* them.

And, in any event, courts interpret the term "immediately" in contracts to mean within a reasonable time under the circumstances. *See Henderson v. McFadden*, 112 F. 389, 395 (5th Cir. 1901) ("if a condition is to be performed immediately or on demand, that means that a reasonable time must be given, according to the nature of the thing to be done"). Without materially similar case law holding that taking 14 months to develop a race-based recruitment plan under an EEOC Settlement Agreement is untimely, a reasonable official could not be certain that the District's performance breached Section III. *See*, *e.g.*, *SawHorse, Inc. v. S. Guar. Ins. Co. of Georgia*, 269 Ga. App. 493, 499 (2004) (holding that reasonable person could conclude that six months was sufficient to satisfy contractual duty to perform act "immediately" in light of the circumstances). Accordingly, the school officials could not be certain their conduct violated federal law. *See Anderson v. Creighton*, *supra* (providing that qualified immunity protects public officials from liability for their reasonable mistakes).

\*\*\*

In sum, the law governing § 1981 claims in this context is anything but clear. There is an open question concerning whether individuals may be held personally liable under § 1981. There is tension in case law concerning whether §

34

1981 claims against public officials are cognizable in the first instance. There is a line of persuasive authority holding that § 1981 does not impose liability on a defendant who is not a party to the contract giving rise to the plaintiff's cause of action. The enforceability of the Settlement Agreement is questionable. And the alleged breach of that Agreement is unclear. Accordingly, the individual officials could not have anticipated their alleged conduct would give rise to liability under § 1981.

### **CONCLUSION**

For the reasons stated above, Appellants ask this Court to reverse the district court's judgment, grant qualified immunity, and dismiss them from this case with prejudice.

Respectfully submitted this 29th day of August, 2024.

/s/ *Bennett Davis Bryan*
Bennett Davis Bryan
Georgia Bar No. 157099
*Attorney for Appellants*

PARKER POE ADAMS & BERNSTEIN LLP
1075 Peachtree Street, NE
Suite 1500
Atlanta, Georgia 30309
678.690.5750 (phone)
404.869.6972 (facsimile)
bennettbryan@parkerpoe.com

## <u>CERTIFICATE OF TYPE-VOLUME COMPLIANCE</u>

Pursuant to Rule 32(a)(7)(B) of the Rules of the United States Court of Appeals for the Eleventh Circuit, the undersigned counsel for the Appellants certifies that this principal brief complies with the type-volume limitation of the rules concerning the number of words (13,000) in a brief. Counsel also certifies that the number of words in this Brief is [7,983], excluding the parts of the brief exempted by Rule 32(f)(7) and Eleventh Circuit Rule 32-4, and certifies that the number of words in this Brief was calculated by the word processing program Microsoft Word.

Respectfully submitted this 29th day of August, 2024.

/s/ *Bennett Davis Bryan*
Bennett Davis Bryan
Georgia Bar No. 157099
*Attorney for Appellants*

PARKER POE ADAMS & BERNSTEIN LLP
1075 Peachtree Street, NE
Suite 1500
Atlanta, Georgia 30309
678.690.5750 (phone)
404.869.6972 (facsimile)
bennettbryan@parkerpoe.com

## <u>CERTIFICATE OF SERVICE</u>

I certify that on this day I electronically filed the foregoing **APPELLANTS'**

**OPENING BRIEF** using the Court's CM/ECF filing system, which will serve an

electronic copy of the same to these attorneys of record:

| Attorney | Attorney |
|---|---|
| Stephen Wesley Woolf | Julie Oinonen |
| 2905 Bull St. | Shahnaz S. Uddin |
| Savannah, GA 31405 | 3344 Peachtree Rd. NE Ste. 800 |
| woolf@woolflawfirm.net | Atlanta, GA 30326-4807 |
| | julie@goodgeorgialawyer.com |

Respectfully submitted this 29th day of August, 2024.

/s/ *Bennett Davis Bryan*
Bennett Davis Bryan
Georgia Bar No. 157099
*Attorney for Defendants/Appellants*

PARKER POE ADAMS & BERNSTEIN LLP
1075 Peachtree Street, NE
Suite 1500
Atlanta, Georgia 30309
678.690.5750 (phone)
404.869.6972 (facsimile)
bennettbryan@parkerpoe.com